IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
_____Athens_____ DIVISION

QUESTIONNAIRE FOR THE PRISONERS PROCEEDING
PRO SE UNDER 42 U.S.C. § 1983

BRENT MCNEAL

(GIVE FULL NAME AND PRISON NUMBER OF PLAINTIFF)

Plaintiff

GREGORY SAMPSON
WARDEN MACON STATE
PRISON

(NAME OF EACH DEFENDANT)

Defendant(s)

CIVIL ACTION NO: _____

## I. GENERAL INFORMATION

1. Your full name and prison number  Brent McNeal #1245253
2. Name and location of prison where you are now confined  Macon State Prison
3. Sentence you are now serving (how long?)  Life With Parole
   (a) What were you convicted of?  Burg, Robbery, Kidnapping, Aggrav Assault
   (b) Name and location of court which imposed sentence  Lowndes County Valdosta
   (c) When was sentence imposed?  4/27/2006
   (d) Did you appeal your sentence and/or conviction?   Yes ☐   No ☑
   (e) What was the result of your appeal?  N/A

(f) Approximate date your sentence will be completed __N/A__

## II. PREVIOUS LAWSUITS

NOTE: FAILURE TO DISCLOSE **ALL** PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE. IF YOU ARE UNSURE OF ANY PRIOR CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL.

4. Other than an appeal of your conviction or sentence, and other than any habeas action, have you filed a lawsuit dealing with the same or similar facts or issues that are involved in this action?
   Yes [ ]   No [✓]

5. If your answer to question 4 is "Yes," list that lawsuit below, giving the following information:
   (IF YOU HAVE FILED MORE THAN ONE LAWSUIT, LIST OTHER LAWSUITS ON A SEPARATE SHEET OF PAPER, GIVING THE SAME INFORMATION FOR EACH)

   (a) Parties to the previous lawsuit INVOLVING SAME FACTS:

   Plaintiff(s): __N/A__

   Defendant(s): __N/A__

   (b) Name of Court: __N/A__
   (c) Docket Number: __N/A__    When did you file this lawsuit? __N/A__
   (d) Name of judge assigned to case: __N/A__
   (e) Is this case still pending?   Yes [ ]   No [✓]
   (f) If your answer to (e) is "No", when was it disposed of and what were the results?
       (DID YOU WIN? WAS THE CASE DISMISSED? DID YOU APPEAL?)

       __N/A__

6. Other than an appeal of your conviction or sentence, and other than any habeas action, have you ever filed any lawsuit while incarcerated or detained?   Yes [ ]   No [✓]

7. If your answer to question 6 is "Yes," list that lawsuit below, giving the following information:
   (IF YOU HAVE FILED MORE THAN ONE LAWSUIT, LIST OTHER LAWSUITS ON A SEPARATE SHEET OF PAPER, GIVING THE SAME INFORMATION FOR EACH)

   (a) Parties to the previous lawsuit:

   Plaintiff(s): __N/A__

   Defendant(s): __N/A__

   (b) Name of Court: __N/A__
   (c) Docket Number: __N/A__    When did you file this lawsuit? __N/A__
   (d) Name of judge assigned to case: __N/A__
   (e) Is this case still pending?   Yes [ ]   No [✓]

(f) If your answer to (e) is "No", when was it disposed of and what were the results?
(DID YOU WIN? WAS THE CASE DISMISSED? DID YOU APPEAL?)

N/A

8. AS TO <u>ANY</u> LAWSUIT FILED IN <u>ANY</u> FEDERAL COURT in which you were permitted to proceed *in forma pauperis*, was any suit dismissed on the ground that it was frivolous, malicious, or failed to state a claim?   Yes ☐   No ☑

If your answer is Yes, state the name of the court and docket number as to each case:

N/A                            N/A

### III. PLACE OF INCIDENT COMPLAINED ABOUT

9. Where did the matters you complain about in this lawsuit take place? Administrative Segregation Tier 1

(a) Does this institution have a grievance procedure?   Yes ☑   No ☐

(b) If your answer to question 9(a) is "Yes", answer the following:

(1) Did you present your complaint(s) herein to the institution as a grievance?
Yes ☑   No ☐

(2) If Yes, what was the result? Denied

(3) If No, explain why not: N/A

(c) What, if anything else, did you do or attempt to do to bring your complaint(s) to the attention of prison officials? Give dates and places and the names of persons talked to.

On 9-3-25 I talked to Counselor Hawkins in Segregation. On 10-8-25 I talked to Mental Health Counselor Ms. L in Segregation.

(d) Did you appeal any denial of your grievance to the highest level possible in the prison system?    Yes ✓   No ☐

(1) If Yes, to whom did you appeal and what was the result? Central Office Appeal Response

(2) If No, explain why you did not appeal: N/A

10. In what other institutions have been confined? Give dates of entry and exit.

Hays State Prison
Augusta State Medical Prison
Ware State Prison
Telfair State Prison
Hancock State Prison

### IV. PARTIES TO THIS LAWSUIT

11. List your CURRENT place of incarceration/mailing address.

Brent Mcneal
Macon State Prison
P.O. Box 426
Oglethorpe, Ga 31068

12. List the full name, the official position, and the place of employment of each defendant in this lawsuit. (ATTACH ADDITIONAL PAGES IF NECESSARY)

Gregory Sampson —— Warden
He is the warden of Macon State Prison He is legally responsible for the operation of Macon State Prison and for the welfare of all the inmates of the Prison.

## V. STATEMENT OF CLAIM

13. In the space hereafter provided, and on separate sheets of paper if necessary, set forth your claims and contentions against the defendant(s) you have named herein. Tell the court <u>WHAT</u> you contend happened to you, <u>WHEN</u> the incident(s) you complain about occurred, <u>WHERE</u> the incident(s) took place, <u>HOW</u> your constitutional rights were violated, and <u>WHO</u> violated them? Describe how <u>each</u> defendant was involved, including the names of other persons who were also involved. If you have more than one claim, number and set forth each claim SEPARATELY.

**DO NOT GIVE ANY LEGAL ARGUMENT OR CIT ANY CASES OR STATUTES AT THIS TIME**; if such is needed at a later time, the court will advise you of this and will afford you sufficient time to make such arguments. KEEP IN MIND THAT RULES 8 OF THE FEDERAL RULES OF CIVIL PROCEDURE <u>REQUIRES</u> THAT PLEADINGS BE <u>SIMPLE</u>, <u>CONCISE</u>, and <u>DIRECT</u>! If the court needs additional information from you, you will be notified.

WHERE did the incident you are complaining about occur? That is, at what institution or institutions? Macon State Prison

WHEN do you allege this incident took place? Administrative Segregation Tier 1

WHAT happened? Warden Gregory Sampson violated the Eighth Amendment by never given me an opportunity with outdoor exercise or recreation. Prison officials violated the Eighth Amendment of my rights, to Cruel and Unusual Punishment when they did not allow me the opportunity with outdoor exercise or recreation. Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979) also see Allen v. Sakai 48 F.3d. 1082 (1995). Although the length of confinement in Segregation varies, I Brent McNeal have been assigned to Administrative Segregation Tier 1 since February 4, 2025. For a seven (7) month period during my longer confinement at Macon State Prison I was kept in solitary confinement for an extended period of time. I was never permitted any outdoor exercise or recreation my turn in the exercise yard was forgotten. Upon information and belief (Page 1 of 11)

As of date 8-29-25 as a matter of prison policy, Per S.O.P 209.06, Page 13 of 21 number 19. Exercise: offenders shall receive a minimum of one (1) hour of exercise per day outside of their assigned cells, five (5) days per week, unless security or safety considerations dictate otherwise. Gen. Pop receive reg. Yard call but also sporting activites so this means there is not a security issue to run Seg Yard. We cannot be deprived of outdoor exercise for long periods of times, and a long-term deprivation of outdoor exercise for inmates is unconstitutional. Hearns V. Terhune, 413 F.3d 1036 (9th Cir. 2005). I'm confined in administrative segregation Tier 1 in H1-dorm cell #107B I live in a atmosphere of fear and apprehsion and are confined under degrading conditions I recognized in Spain that some form of regular outdoor exercise is extremely important to the psychological and physical wellbeing of the inmates. Spain, 600 F.2d at 199. I were in long-term incarceration where im in continuous segregation generally spending virtually all my time each day in this cell, yes spending twenty-four hours each day alone in my cell with only a meager out of cell movement only when they run shower or when they run hair cuts. Outdoor exercise required when prisoner otherwise confined in small cells almost 24 hours per day. Spain V. Procunier, 600 F.2d 189, 199 (CA9 1979). I have asked several officers over this time to allow rec. call but was (Page 2 of 11)

denied several times by warden Sampson who ignored illegal actions by guards he supervised the officials failed to follow their own rule by placing me there the officials knew of the condition and never respond to it in a reasonable manner. Wilson V. Seiter, 501 U.S. 94, 304, 111 S.Ct. 2327, 115 L Ed 2d 27 (1991). The denial of fresh air and regular outdoor exercise and recreation constitutes cruel and unusual punishment, 408 F.Supp. at 547, and Task the officials to accord me the right of outdoor exercise one hour per day, five days a week, unless inclement weather, unusual circumstances, or disciplinary needs made that impossible. The condition put me at serious risk for an injury in the future. The condition there is intolerable of lack of outdoor exercise due to this matter im experiencing stress, sleepless nights, anxiety and weightloss. This has been an on going occurence over the past seven (7) months. On 8-29-25 I wrote a Grievance alleging that im being deprived of outdoor exercise while conducting rounds in H1-dorm I gave the grievance form to counselor Hawkins she took the form read the form and sign the receipt an gave the receipt back to me. On 9-3-25 While conducting rounds in H1-dorm I turned in a witness statement form to counselor Hawkins about how warden Sampson violated my right to cruel and unusal punishment by not providing me an opportunity with outdoor exercise while I was confined (Page 3 of 11)

in administrative Segregation Tier1. After I file my grievance alleging that im being deprived of outdoor exercise on 9-11-25 Unit Manager Ms. Hamilton walked the dorm and asked do you want to go to the yard when she got to our room Cell#107 She kept silence me and my cellmate wanted to go to the yard we were inspection ready we said out loud yes we want yard call she just walked away we were denied yard call we never went on the yard that day. On 9-30-25 The dorm orderly came around and asked do we want to go to the yard we said yes when Ms Hamilton walked around the dorm she just skip our room we were inspection ready we said out loud yes we want yard call we never went on the yard that day. Since I have been back here in administrative Segregation Tier1 she attemped to run yard call 2 times in the month of September I feel like she never justified yard call that is not enough times to run yardcall. You can check the Security Camera in H1-dorm and the log Book. On 10-8-25 I talked to mental Health Counselor Ms.L about experiencing stress, sleepless nights, anxiety and weight loss due to the fact for a seven (7) month period during my longer confinement in Segregation Tier1 at Macon State Prison my turn in the exercise yard was forgotten. Warden Sampson failed to provide me in Segregation Tier1 with any opportunity of outdoor exercise or recreation. Prison must provide prisoners with opportunities for exercise outside of their cells. Keenan V. Hall, 83 F. 3d 1083, 1089 (9th Cir. 1996). On 10-20-25 I received (Page 4 of 11)

my Warden's/Superintendent's Grievance Response came back from Counselor Walker the response to the grievance was: Offender Mcneeal was provided with inside cell workout sheets, Grievance Denied. That was a lie im positive I and no prisoner ever received a copy of this document, the inside cell workout sheet. Warden Sampson made or carried out a policy that led to the deprivation that led to the violation of my rights he is responsible for creating a policy that led to the deprivation. Warden Sampson had the freedom to act on his own judgment, rather than just follow a rule he are said to have performed a "discretionary function or duty. Warden Sampson action cannot make the Unitedstate liable under the FTCA this is true if he abused his discretion. 28 U.S.C. § 2680[a] This is in contrast to when an employee is just implementing a policy or prison regulation. On 10-21-25 I appealed the grievance #385912 while conducting rounds in H1-dorm I turned in a appeal form to counselor Ms. Hawkins she read the grievance appeal form sign the receipt and gave me the receipt back and left from my door cell #107. On 10-23-25 I talked to mental Health counselor Ms. L again about experiencing stress, anxiety and weightloss and I have been constipateing having cramps and I have hemmrods Ms. L told me she gone talk to someone to get me out on the yard I never went on the yard that day. The condition was obvious that the official's must either know about (Page 5 of 11)

it or be purposefully ignoring it. Farmer V. Brenan, 511 U.S. 825 (1994). On 10-24-25 cheif counselor Ms. Walker brought me my Central office Appeal Response it was Denied. Once again im positive I and no prisoner had ever received a copy of the inside cell workout sheet. I never was provided with a inside cell workout sheet, I never was encouraged to use a incell recreation sheet and I never utilize the incell receation handout. Warden Sampson never investigated or reexamine their policy this issue never been addressed with facility staff and no documtation has been presented regarding this issue. Yes im positive I have exhausted all remedies completely I have exhausted all grievance procedures. Warden Sampson never correct the deficiencies and allowed me an opportunity to report on my progress these rulings proved in adequate for the protection of me. Warden Sampson learned of the violation of my rights and failed to do anything to fix the situation he knew I were being deprived and did not respond reasonably he were put on notice because of administrative grievance and witness statement forms and notifying Mental Health he were aware of the conditions and had available alternative avenues to address the condition he knew better he could have put me inside the Kiosk cage in H1-dorm for one (1) hour. Warden Sampson and prison official cannot ignore a problem once it is brought to their attention. Vance v. Peters, 97 F.3d 987 (7th Cir. 1996). On 11-18-25 the orderly name Chris that work (Page 6 of 11)

in H1-dorm came to my cell #107 and told me and my cellmate to pack up we have to move up stairs. I asked why do we have to move he said the counselor made the move it was strange because we have done nothing wrong to get moved. I started to have devasting psychological and emotional consequences I then got scared and frighten because I seen alot of people get stab an killed since I have been back here in administrative segregation Tier 1. It made me feel very upset unit Manager Ms. Hamilton then came to my cell #107 and told me and my cellmate to come and cuff up we have to move up stairs to cell #207 I asked her why we have to move we done nothing wrong to get moved she never said anything I then had a panic attack I had a nerves break down I told Ms. Hamilton to get mental Health down here im find to kill myself She told me frist I have to move up stairs to cell #207. A risk of suicide is a serious medical need for the purpose of the Eighth Amendment. Estate of Cole by Pardue v. Fromm, 94 F.3d 254 (7th Cir. 1996) Gregoire v. Class, 236 F.3d 413 (8th Cir. 2000). I complyed we moved up stairs she put us in the cell #207 she then got Mental Health to cell #207 I spoke to Mental Health Counselor Palmer at that time Sergeant VieRcks was standing with him I told Mr. Palmer what the problem was im find to kill myself because they moved me out my cell #107 for no reason I done nothing wrong to get moved these people in administration trying to hurt me and harass me. Mr. Palmer left from cell #207 the cell I was inn. Sergeant VieRcks was still standing in front of the cell #207 he stood there for about 8 min before he left from the cell door. (Page 7 of 11)

About 3min later Sergeant Vieras came back to cell #207 he told me to cuff up im going to Mental Health I cuffed up he open the door I then asked can I take my property with me I had in a trash bag he said no leave it in the room so I left my property in the room with my cellmate he then escorted me to Mental Health. When I got to mental Health I seen Mr. Palmer I told him what the problem was that the prison officials is trying to scare me away they trying to hurt me and harass me. They showed retatiation by moveing me from one cell#107 to another cell#207 for no reason Ms. Hamilton harassed me by moveing me from cell#107 to another cell#207 so they could hurt me, my turn in the exercise yard already was forgotten. I wanted protective custody (PC) because I was scared and frighten I told Mr. Palmer I had aenimy at this camp and I fear for my saftey an I would be at risk for harm in general population. Mr. Palmer asked me what was his name I told him what his name was he wrote it down on paper on his desk. That was the reason I will not go to general population. I never been on the compound I did all my time in segregation. I was concern and worried about the conditions and how seriously it could affect my health and saftey even though certain conditions might not be unconstitutional on their own, they add up to create an overall effect that is unconstitutional. Palmer V. Johnson, 193 F.3d 346 (5th Cir. 1999). The condition put me at serious risk for an injury in the future. I then spoke with (Page 8 of 11)

Mental Health Doctor Moore I told him what the problem was he then put me on two (2) types of mental Health medication after I spoke to Doctor Moore I was escorted back to H1-dorm Sergeant Vickaers put me inside the kiosk cage I stayed in the kiosk cage for about 35 to 45 min before he let me out of the kiosk cage to go up stairs to cell#207 to get my property I left inside the room with my cellmate. I was involuntary removed from H1-dorm cell#107 to J2-dorm cell#125 a strip cell for mandatory Mental Health Treatment I was transferred to a different location within the prison I was transferred to an unusual unit J2-#125 a strip cell. The frist day in the strip cell I was stripped of my clothes for one day they also took away my property. The next day Sergeant Jordan escorted me from J2-#125 to mental Health I seen Mr. Palmer again I told him whom im up here to see he told me I have to talk to Doctor shine I told her what the problem was she then told me I can have my property back and then I was escorted from mental Health back to J2-#125 a strip cell. Sergeant Jordan gave my clothes and property back that day. I notice that I had a hole on the trash bag I was missing alot of my property I was given my property back on 11-19-25. I have been on strip cell in J2-#125 for a while now the bunk sit very low to the ground so I have to sleep with the roaches and rats it is a roach and rat infestation in this room. when I have food I double wrap my food with sandwhich bag, the rats and roaches (Page 9 of 11)

still get to my food I see and hear them every day. Some nights the rats wake me up at night when they jump up in the bed with me it is a rat hole at the front door on the side of the vent I hear them run thew the vent everyday and night. Prisoners are entitled to no rat or roach infestations. Womble v. Chrisman, 770 F. App'x 918, 925 (10th Cir. 2019). On 12-17-25 Sergeant Jordan escorted me to mental Health I spoke with Doctor Shine. She asked me a few questions and then I was escorted back to J2-#125 by Mr. Jordan. Warden Gregory Sampson attempt to excuse the deprivation by explaining that offender Mcneal was provided with inside cell work out sheets, our inquiry confirmed outside recreation has not been consistent due to the staffing, security or safety issues. During our inquiry, Prison officials indicated policy permits the suspension of yard call when a facility dose not have the minimum number of staff to safely move and supervise the offenders during yard time. In the place of outside recreation, offenders are encouraged to use the in-cell recreation sheet. Offenders are encoraged to utilize the in-cell recreation handouts and to voice any mental health concerns to the counseling staff. This issue has been addressed with facility staff and documentation has been practical difficities that arise in administering a prison facility from time to time might justify an occasional and brief deprivation of an inmate's (Page 10 of 11)

opportunity to exercise outside. However, I cannot accept warden Sampson vague reference to offender Mcneal was provided with inside cell workout sheets and their inquiry confirmed outside recreation has not been consistent due to the staffing, security or safety issues as necessarily justifying. You can look at the video cammera in J2-#125 a strip cell I was inn. On 12-25-25 I was harassed by unite Manager Hacchett took away all my property including my bed mattress leaving me with nothing in the cell I was inn. I only had my tee-shirt, boxers, socks and shower shoes there was no reasonable justification for the invasine search if I done anything wrong I should have gotten a Disciplinary Report (DR) I never received a (DR) for anything that day. On 12-27-25 I was moved from J2-#125 a strip cell without all my property and my bed mattress. I was moved to H2-229 with only my tee-shirt, boxers, socks and shower shoes on. On 1-1-26 I was given all my property back and bed mattress. I stayed without all my property and bed mattress for eight (8) days I had to sleep on the steel bunk bed for eight (8) days and I was very cold. For three days I were locked in a strip cell without my property and a bed mattress, and pillow then I was moved to H2 dorm without my property and a bed mattress and pillow. I stayed like this for eight (8) days. Denial of outdoor exercise to inmates assigned to administrative Segregation for over one year raised substantial constitutional question. Toussaint V.    (Page 11 of 11)

14. List the name and address of every person you believe was a WITNESS to the incident(s) you complain about, BRIEFLY stating what you believe each person knows from having seen or heard what happened. (USE ADDITIONAL SHEETS, IF NECESSARY)

Trent Tackett #1000992284 I was housed in H1 dorm currently in Cell #119 right accross from Cell #107 Brent Mcneal was currently in Cell #107. On 8-29-25 Warden Gregory Sampson did not provide Mcneal with an opportunity with outdoor exercise or recreation he never was encouraged to utilize the in-cell recreation handout.

15. BRIEFLY state exactly what you want the court to do for you. That is, what kind of relief are you seeking in this lawsuit? Do not make any legal arguments and do not cite any cases or statutes! (USE ADDITIONAL SHEETS, IF NECESSARY)

Mcneal seeks nominal and compensatory damages in the amount of 1000.00 per day from the time I have been back here in Administrative Segregation Tier which was on 2-4-25. Mcneal seeks damages against Gregory Sampson, jointly and severally.

16. You may attach additional pages if you wish to make any legal argument. However, legal arguments are NOT required in order for you to obtain relief under §1983. If the court desires legal argument from you, it will request it. If any defendant presents a legal argument, you will be afforded an opportunity to respond thereto.

17. KEEP IN MIND THAT ONCE YOUR LAWSUIT IS FILED, THE COURT WILL REQUIRE YOU TO DILIGENTLY PROSECUTE IT. That means that you will be required to go forward with your case without delay. Thus, if you fail to adequately prepare your case before you file it, you may find your lawsuit dismissed for failure to prosecute if you take no action once it is filed. YOU WILL RECEIVE NO FURTHER INSTRUCTIONS FROM THE COURT TELLING YOU WHAT TO DO OR HOW TO DO IT! IT IS YOUR RESPONSIBILITY AND YOURS ALONE TO PROSECUTE YOUR OWN CASE! If you fail to prosecute your case, it will be dismissed under Rule 41 of the Federal Rules of Civil Procedure.

Signed this 15th day of January, 2026.

BRENT McNeal
PLAINTIFF